George W. Donahoo, Plaintiff-Appellee, v. Board of Education, School District Number 303, Moultrie County, Illinois et al., Defendants-Appellants.

Gen. No. 9,811.

Opinion filed March 11, 1952. Released for publication April 7, 1952.

RODNEY A. SCOTT, of Sullivan, and MONROE & MC-GAUGHEY, of Decatur, for appellants.

KEITH E. HUTSON, of Monticello, and ROBERT F. WHITE, of Sullivan, for appellee.

MR. JUSTICE WHEAT delivered the opinion of the court.

Defendant, Board of Education of School District No. 303 of Moultrie county, appeals from an order of the circuit court of Moultrie county directing that a writ of mandamus issue commanding defendant Board and its individual members to reinstate petitioner, George W. Donahoo, as a full-time teacher as of the beginning of the school year 1950–51 on the same terms and conditions under which petitioner was employed for the 1949–50 school year of said District.

Petitioner, a legally qualified and certified teacher, taught in the schools of defendant Board for the school year 1948–49 under a written contract providing for a salary of $2,250. By written contract he was re-employed for the school year 1949–50 at a salary of $2,500 and served out the second term. During both terms petitioner taught in a one-room country school-house which was heated by a coal furnace during the whole of the first term and part of the second. While no provision was made therefor in the written contract for either term, petitioner was required to tend the furnace and to perform other janitor services in the schoolhouse as his predecessors had, over a period of many years. During the first term defendant Board paid petitioner $100 additional compensation for janitor fees and during the second term he was paid a like amount out of school funds as extra compensation for janitor work. The latter payment was apparently inadvertently made by the Board Treasurer without the Board's knowledge or approval.

Before the end of the 1949–50 term a gas furnace controlled by a thermostat was installed in the school building making it unnecessary to fire the furnace or carry coal and ashes. On March 23, 1950, petitioner was informed by the Superintendent of the School Dis-

242

trict and Board Member Rainey that the Board had passed a resolution offering him a contract for the coming year at a salary of $2,550, his duties to include teaching eight grades, if necessary, instead of seven as theretofore, and also to include performance of janitor services. Petitioner replied he would resign rather than accept such a contract, that he planned to seek another position, but that he would submit a letter by March 25 advising whether he would accept or reject the offer.

On the evening of March 23, petitioner telephoned the School District Superintendent and advised that he accepted the offer as it had been made that morning. He made no reply, however, to the Superintendent's question whether he accepted the janitor work, although he knew that was expected by the Board.

Thereafter, on the morning of March 25, 1950, petitioner handed Board Member Rainey the following letter:

"Lovington, Ill.
Mar. 25, 1950

School Board Lovington Unit Dist. #303,
Lovington, Ill.

I called Superintendent Henninger at ten o'clock p. m. Thursday the 23rd, telling him that I accepted the offer made to me earlier that day. That offer was an increase of fifty ($50.00) dollars over this year's salary of $2500.00 for teaching, as the records will show. There was to be no increase in the pay for the janitor work. I consider that I am hired and await your convenience for signing the contract.

Very truly yours,
Geo. W. Donahoo"

On the evening of March 25, Board Member Rainey delivered to petitioner in person at his home the following letter:

"March 25, 1950
1:30 P. M.

Mr. George W. Donahoo
Lovington, Illinois
Dear Sir:

This is to notify you that your school contract for the year 1950–1951 at the White School in Lovington Unit #303 will not be renewed.

Yours truly,
Jasper Rainey
O. H. Schable
Elvin Atherton"

The next communication between the parties was petitioner's letter of August 23, 1950, the substance of which is as follows:

"Sirs:

This is to notify you that my contract continues for teaching in the Lovington Unit and that I will be at White School ready to begin work according to provisions of said contract.

Yours truly,
Geo. W. Donahoo"

On August 28, 1950, petitioner addressed a letter to the School District Superintendent advising that he considered himself on contractual-continued service at his former salary of $2,500. On the same date he presented himself at a pre-school conference and was informed there was no teaching position for him. Thereafter, petitioner instituted the proceeding from which this appeal follows.

For reversal, defendant relies primarily upon the finding of the trial court that petitioner entered upon contractual-continued service at the end of the 1949–50 school term because of the fact that the written notice of dismissal contained in the above letter of March 25, 1950, does not comply with all of the provisions of sec-

244

tion 24–2 of the School Code (Ill. Rev. Stat. 1949, chap. 122, sec. 24–2) [Jones Ill. Stats. Ann. 123.1125], the pertinent provision of which is as follows:

"Any teacher who has been employed in any District as a full-time teacher for a probationary period of two consecutive school terms shall enter upon contractual continued service unless given written notice of dismissal stating the specific reason therefor, by registered mail by the employing Board at least sixty days before the end of such period."

█ Passing mention is made in petitioner's brief of various formal defects in the written notification of March 25, including the Board's failure to send it to petitioner by registered mail, as required by statute. None of these points has been seriously argued, however, and we believe it abundantly clear that delivery to the addressee in person constitutes full and sufficient compliance with the intent of the statute and satisfies its purpose even more fully than would literal compliance with the statute.

The basic question raised by this appeal is whether it is mandatory that the notice of dismissal provided for in the above quoted section of the statute state the specific reason for dismissal.

Defendants contend that the notice requirement is merely directory, not mandatory, and that the notice given petitioner was therefore, sufficient. In support of this position defendants point out that after a teacher's two-year probationary period has expired and he has entered upon contractual-continued service he may be discharged only for certain specified causes and after hearing had in accordance with procedure detailed at length in section 24–3 of the Act. [Ill. Rev. Stat. 1949, ch. 122, sec. 24–3; Jones Ill. Stats. Ann. 123.1126.]

In such circumstances, except in case of a Board's decision to decrease its staff, dismissal or removal of a

245

teacher must be approved by a majority vote of all members of the Board upon specific charges and after hearing if written request therefor is made by the teacher. The hearing may be made public at the request of either the teacher or the Board. The teacher may be present with counsel, may cross-examine witnesses, may offer evidence and may present defenses to the charges. Either the Board or the teacher may subpoena witnesses and all testimony is taken under oath. The Board is required to cause a stenographic record of proceedings to be made, and detailed procedure for appeal of the Board's decision to the County Superintendent of Schools is provided for in section 24-4 of the Act.

Section 24-2 of the School Code, in striking contrast, provides no procedure or remedy to be pursued by a teacher dismissed before he has entered upon contractual-continued service. *In such case no provision whatever is made for hearing or for appeal from the Board's action.* Similarly, no provision is made in section 24-2, as in section 24-3, for delivery to the teacher of written warning concerning potential causes for dismissal which the Board may deem remediable.

Defendants contend that in these circumstances it is ridiculous to construe as mandatory the provision of section 24-2 of the Code providing for statement of reasons for dismissal. Defendants urge that no matter how arbitrary and unreasonable the assigned reason might be, a teacher who has not entered upon tenure at the time of dismissal has no further rights and no remedy and that consequently the failure of the notice in question to state a reason for dismissal does not affect petitioner in any way.

We have found no cases or authorities nor has counsel for either party cited any decision clearly decisive of the question. The numerous cases relied upon by petitioner are from other jurisdictions and are not in

246

point for the reason that in each of them the teacher in question had already entered upon contractual-continued service.

Relying primarily on *Betebenner v. Board of Education,* 336 Ill. App. 448, petitioner urges that the tenure law was enacted for the very purpose of preventing dismissal for "political, partisan, capricious, or purely personal or malicious" reasons, having nothing whatever to do with the experience and ability of the teacher. That the tenure law has this effect after expiration of the probationary period is possible. It is far from clear, however, that the legislature was equally solicitous of the teacher before expiration of the probationary period. We find highly significant the striking contrast between the elaborate provision made for protection of a tenure teacher when compared with the complete lack of provision for remedial steps to be taken by a probationary teacher.

█ Moreover, it has been repeatedly held by the Appellate Courts of this State that the tenure law, being in derogation of the common law and creating a new liability, should be strictly construed in favor of the Board of Education (*Eveland v. Board of Education,* 340 Ill. App. 308; *Biehn v. Tess,* 340 Ill. App. 140; *Pack v. Sporleder,* 394 Ill. 130; *People v. City of Chicago,* 278 Ill. 318; *People ex rel. Davidson v. Bradley,* 382 Ill. 383).

Perhaps the most cogent argument made by petitioner is that even though a probationary teacher is given no opportunity to be heard as to the reason for his dismissal, the very fact that the Board is required to put in writing its specific reason therefor is a positive deterrent to arbitrary action by the Board. It is urged, in other words, that a Board which may dismiss without written statement of reason therefor will be much more ready to dismiss arbitrarily than a Board which must expose to public opinion and criticism a

positive written statement of the cause of dismissal. Circumstances may readily be conceived, however, in which public disclosure of entirely valid reasons for dismissal would benefit neither the probationary teacher, the Board, nor the public. If the failure of the legislature to provide a remedy for a teacher dismissed while on probation was an inadvertence, it is one which this court cannot rectify.

We are inclined, however, to the view that the clear distinction between the remedies given a probationary teacher and one entered upon tenure is both intentional and of decisive significance. As the probationary teacher has no further rights even if reason for dismissal is assigned in the dismissal notice, we are of the opinion that the provision in question is directory only, and that the above letter of March 25, 1950, constitutes sufficient compliance with section 24–2 of the statute. The judgment of the circuit court is reversed.

*Reversed.*